UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

DEREK MORTLAND,                    )    CASE NO.:    _____
                                   )
              Plaintiff,           )    JUDGE:       _____
                                   )
        vs.                        )
                                   )    **COMPLAINT FOR INJUNCTIVE**
                                   )    **RELIEF AND DAMAGES:**
                                   )
GLENSTONE LODGE, INC.,             )
                                   )    **1ST CAUSE OF ACTION:** For Denial of
              Defendant.           )    Access by a Public Accommodation in
                                   )    Violation of the Americans with Disability
                                   )    Act of 1990 ("Title III" and "ADA")
                                   )    42 U.S.C. §§ 12181 *et seq.*
                                   )
                                   )
                                   )    **2ND CAUSE OF ACTION:** For Violation
                                   )    of Tennessee Consumer Protection Act,
                                   )    Tenn. Code Ann. § 47-18-101 *et seq.*
                                   )
                                   )
                                   )

        Plaintiff Derek Mortland Complains of Defendant Glenstone Lodge Inc. and alleges as follows:

**INTRODUCTION:**

        1.      This is a civil rights action for discrimination against persons with physical disabilities, of which plaintiff is a member of, for failure to remove architectural barriers structural in nature at Defendant's property, a place of public accommodation, thereby discriminatorily denying plaintiff access to, the full and equal enjoyment of, opportunity to participate in, and benefit from, the goods, facilities, services, and accommodations thereof. Plaintiff seeks injunctive relief and damages pursuant to the Americans with Disability Act of

COMPLAINT - 1

1990 ("title III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and the Tennessee Persons with Disabilities Civil Rights Act M.C.L 37.1301, *et seq.*

2.     Plaintiff Derek Mortland is a person with physical disabilities who, on or about November 8, 2025, through November 9, 2025, was an invitee, guest, patron, or customer at Defendant's property, which houses the Glenstone Lodge hotel, located at 504 Airport Road, Gatlinburg, TN 37738. At said time and place, Defendant failed to provide proper legal access to the property, which is a public accommodation and/or public facility. The denial of access was in violation of both federal and Tennessee legal requirements, and Mr. Mortland suffered violations of his civil rights to full and equal access and was embarrassed and humiliated.

**JURISDICTION AND VENUE:**

3.     **Jurisdiction**: This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 for violations of the Americans with Disabilities Act of 1990, 42 U.S.C. §12101, et seq. Pursuant to pendant jurisdiction, attendant and related causes of action, arising from the same nucleus of operative facts and arising out of the same transactions, are also brought under parallel Tennessee law, whose goals are closely tied with the ADA, including but not limited to violations of the Tennessee Consumer Protection Act, Tenn. Code Ann. Section 47-18-101, *et seq.*

4.     **Venue**: Venue is proper in this court pursuant to 28 U.S.C. §1391(b) and is founded on the facts that the real property which is the subject of this action is located in this district, in the City of Gatlinburg, County of Sevier, State of Tennessee and that plaintiff's causes of action arose in this district.

**PARTIES:**

5.     Plaintiff Derek Mortland is a "physically handicapped person," a "physically

COMPLAINT - 2

disabled person," and a "person with physical disabilities." (Hereinafter the terms "physically disabled," "physically handicapped" and "person with physical disabilities" are used interchangeably, as these words have similar or identical common usage and legal meaning.) Mr. Mortland is a "person with physical disabilities," as defined by all applicable Tennessee and United States laws. Mr. Mortland requires the use of a wheelchair to travel about in public. Consequently, Mr. Mortland is a member of that portion of the public whose rights are protected by Tennessee Civil Rights Law.

6. Defendant Glenstone Lodge, Inc., a Tennessee entity, is the owner and operator lessor and/or lessee, or agent of the owner, lessor and/or lessee, of the building and/or buildings which constitute a public facility in and of itself, occupied by the Glenstone Lodge hotel, a public accommodation, located at/near 504 Airport Road, Gatlinburg, TN 37738, and subject to the requirements of federal law requiring full and equal access to public facilities pursuant to the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and to all other legal requirements referred to in this complaint.

7. At all times relevant to this complaint, Defendant is the lessee, or agent of the lessee, and/or lessor, of said premises, and owns and operates the subject Glenstone Lodge hotel as a public facility at/near 504 Airport Road, Gatlinburg, TN 37738. The business, the Glenstone Lodge hotel, is open to the general public and conducts business therein. The business operating on said premises is a public accommodation subject to the requirements of the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*

8. At all times relevant to this complaint, Defendant is the landlord/lessor, tenant/lessee and the owner and operator of the subject hotel, a public accommodation located at/near 504 Airport Road, Gatlinburg, TN 37738. As such, Defendant is jointly and severally

COMPLAINT - 3

responsible to identify and remove architectural barriers pursuant to Code of Federal Regulations section 36.201(b), which states in pertinent part:

**§ 36.201** **General**

(b) Landlord and tenant responsibilities. Both the landlord who owns the building that houses a place of public accommodation and the tenant who owns or operates the place of public accommodation are public accommodations subject to the requirements of this part. As between the parties, allocation of responsibility for complying with the obligations of this part may be determined by lease or other contract.

CFR §36.201(b)

9. Plaintiff does not know the true name of Defendant, their business capacities, their ownership connection to the property and business, nor their relative responsibilities in causing the access violations herein complained of. Plaintiff is informed and believes that the Defendant herein is a public accommodation, and is the agent, ostensible agent, master, servant, employer, employee, representative, franchisor, franchisee, partner, and associate, or such similar capacity, of each of the other defendant, if any, and was at all times acting and performing, or failing to act or perform, within the course and scope of his, her or its authority as agents, ostensible agents, masters, servants, employers, employees, representatives, franchisers, franchisees, partners, and associates, or such similar capacity, and with the authorization, consent, permission or ratification of each of the other defendant, and is responsible in some manner for the acts and omissions of the other defendant in legally causing the violations and damages complained of herein, and have approved or ratified each of the acts or omissions of each other defendant, as herein described.

**PRELIMINARY FACTUAL ALLEGATIONS:**

10. Defendant is the individual and/or entity that is a public accommodation that

COMPLAINT - 4

owns, leases (or leases to), or operates, the Glenstone Lodge hotel, located at 504 Airport Road, Gatlinburg, TN 37738. The Glenstone Lodge hotel and each of its facilities are places "of public accommodation" subject to the requirements of the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, and Tennessee law. On information and belief, said facility has undergone "alterations, structural repairs and additions," each of which has subjected the Glenstone Lodge hotel to handicapped access requirements.

11. Plaintiff Derek Mortland is a person with a disability. Mr. Mortland is a "physically disabled person," as defined by all applicable Tennessee and United States laws. Mr. Mortland is paralyzed and requires the use of a wheelchair for mobility and to travel in public.

12. At all times referred to herein and continuing to the present time, Defendant advertised, publicized and held out the Glenstone Lodge hotel as being handicapped accessible and handicapped usable, as follows:

    a. Accessible guest rooms with mobility features with entry or passage doors that provide 32" clear width;

    b. Accessible parking spaces for cars in the self-parking facility;

    c. Accessible public entrance;

    d. Accessible route from the accessible public entrance to the Accessible guest rooms;

    e. Accessible route from the accessible public entrance to the meeting room/ballroom area;

    f. Accessible route from the accessible public entrance to the business center;

    g. Accessible route from the accessible public entrance to the swimming pool;

    h. Van-accessible parking at the self-parking facility;

COMPLAINT - 5

i.   Braille elevator;

j.   Grab bars in the bathroom;

k.   Level or ramp entrance into the building;

l.   Service support animals welcome;

m.   Alarms – audible;

n.   Bathroom doors at least 32" wide;

o.   Bedroom doors at least 32" wide;

p.   Grab bars in bathroom;

q.   Rooms accessible to wheelchairs (no steps).

13. On or about November 8, 2025, through November 9, 2025, Mr. Mortland was an invitee and guest at the subject Glenstone Lodge hotel, arriving for purposes of obtaining lodging.

14.  Upon his arrival, during his patronizing of the public accommodation, and upon his exit of the facility, Mr. Mortland personally encountered architectural barriers which denied him the full and equal access to the property.

15.  Mr. Mortland, who is a person with disabilities, encountered numerous inaccessible elements of the subject Glenstone Lodge hotel which constituted architectural barriers and a denial of the proper and legally required access to a public accommodation to persons with physical disabilities. *By way of example and not as an exhaustive inventory of Defendant's violations*, Mr. Mortland personally encountered all the following barriers to access within the facility. Having encountered all the below barriers to access, Mr. Mortland faced serious difficulty as a wheelchair user in ambulating and using the various amenities of the hotel.

COMPLAINT - 6

**Guest Room #197**

a. The maneuvering clearance at the door to Room 197 exceeded a 2% slope, in violation of 2010 ADAS 404.2.4.1, 1991 ADAS 4.13.6, and 1986 ANSI A117.1 4.13.6. This excessive slope, caused by a ramp, made it difficult or unsafe for Mr. Mortland to enter or exit the room independently, impeding his mobility and autonomy.

b. The maneuvering clearance on the pull side of the door was less than 18 inches beyond the latch side, and furniture obstructed the space, violating 2010 ADAS 404.2.4.1, 1991 ADAS 4.13.6, and 1986 ANSI A117.1 4.13.6. As a result, Mr. Mortland was unable to open the door from inside without difficulty, limiting his independence.

c. The windows and drapes in Room 197 were inaccessible due to inadequate clear floor space, contrary to 2010 ADAS 305.3, 1991 ADAS 4.2.4.1, and 1986 ANSI A117.1 4.2.4.1. This prevented Mr. Mortland from safely reaching or operating the windows and drapes, restricting his ability to control lighting and privacy.

d. The drape wands were mounted higher than 48 inches, out of reach for a wheelchair user, violating 2010 ADAS 308.2.1, 1991 ADAS 4.2.5, and 1986 ANSI A117.1 4.2.5. This meant Mr. Mortland could not safely adjust the drapes, further limiting his control over his environment.

e. The climate controls were blocked by furniture, denying Mr. Mortland access in violation of 2010 ADAS 305.3, 1991 ADAS 4.2.4.1, and 1986 ANSI A117.1 4.2.4.1. This prevented him from independently adjusting the room temperature, impacting his comfort.

f. The accessible table in the room lacked compliant knee clearance, violating 2010 ADAS 306.3.3, 1991 ADAS 4.32.3, and 1986 ANSI A117.1 4.30.3 and 4.32.3. As a result, Mr.

COMPLAINT - 7

Mortland was unable to use the table for dining or work.

g. The required clear space on both sides of the bed was not provided, with only 27 inches on one side, in violation of 2010 ADAS 806.2.3, 1991 ADAS 9.2.2(1), and 1986 ANSI A117.1 4.3.7. This restricted Mr. Mortland's ability to safely transfer to and from the bed.

h. The iron was mounted at 57.5 inches, out of reach for a wheelchair user, violating 2010 ADAS 308.2.1, 1991 ADAS 4.2.5, and 1986 ANSI A117.1 4.2.5. This prevented Mr. Mortland from using the iron independently.

i. The closet rod and shelf were mounted between 72 and 73.5 inches, making them inaccessible and violating 2010 ADAS 308.2.1, 1991 ADAS 4.2.5, and 1986 ANSI A117.1 4.2.5. Mr. Mortland was unable to access the closet storage.

j. The lavatory knee clearance at 27 inches above the floor was only 1.5 inches deep, far less than required by 2010 ADAS 306.3.3 and 1991 ADAS 4.19.2. This prevented Mr. Mortland from rolling under the sink to use it.

k. The clear floor space at the shower was sloped greater than 2%, violating 2010 ADAS 305.2, 1991 ADAS 4.2.4.1, and 1986 ANSI A117.1 4.2.4.1. This made it hazardous for Mr. Mortland to safely enter or use the shower.

l. The operable parts of the shower controls were not located on the back wall adjacent to the seat, exceeding the 27-inch maximum required by 2010 ADAS 608.5.2 and 1991 ADAS 4.21.5. This made the controls unreachable from the seat for Mr. Mortland.

m. The shower spray unit's operable parts were mounted higher than 48 inches, violating 2010 ADAS 205.1, 1991 ADAS 4.27.1 and 4.27.3, and 1986 ANSI A117.1 4.25.1 and 4.25.3. Mr. Mortland could not safely use the shower spray independently.

n. The grab bar opposite the shower seat was missing, in violation of 2010 ADAS 608.3.2.

COMPLAINT - 8

This compromised Mr. Mortland's safety during transfers in the shower.

o. The grab bar was spaced too far from the wall, violating 1991 ADAS 4.26.2. This made the grab bar difficult or unsafe for Mr. Mortland to use.

p. The side grab bar did not extend far enough from the rear wall, violating 2010 ADAS 604.5.1, 1991 ADAS 4.17.6, and 1986 ANSI A117.1 4.17.6. This reduced support for Mr. Mortland during transfers.

q. The clear floor space at the water closet was only 46.5 inches wide, less than required by 1991 ADAS 4.16.2 and 1986 ANSI A117.1 4.16.2. This restricted Mr. Mortland's ability to position his wheelchair for safe transfers.

r. The toilet centerline was 20.5 inches from the side wall, exceeding the 18-inch requirement of 1991 ADAS 4.16.2 and 1986 ANSI A117.1 4.16.2 and 4.6.2. This made transfers more difficult for Mr. Mortland.

s. The ramp to the shower intruded 14 inches into the clear floor space for the toilet, violating 2010 ADAS 604.3.2. This further restricted Mr. Mortland's access to the toilet.

t. The flush handle was located in the middle of the tank, not on the wide side, violating 1991 ADAS 4.16.5 and 1986 ANSI A117.1 4.16.5 and 4.18.4. This made it difficult for Mr. Mortland to operate the flush.

u. The flush control was on the closed side of the toilet, not the open side, violating 2010 ADAS 604.6. This impeded Mr. Mortland's access to the flush control.

v. The toilet paper dispenser was out of reach range, violating 2010 ADAS 604.7. Mr. Mortland had difficulty reaching the toilet paper.

w. The light switch was mounted at 53.5 inches, above the maximum reach range, violating 2010 ADAS 308.2.1, 1991 ADAS 4.2.5, and 1986 ANSI A117.1 4.2.5. Mr. Mortland

COMPLAINT - 9

could not operate the light switch without strain.

x. The door security latch was mounted at 64 inches, well above reach range, violating 2010 ADAS 308.2.1, 1991 ADAS 4.2.5, and 1986 ANSI A117.1 4.2.5. This made the security latch unusable for Mr. Mortland.

**Additional Accessible Guestrooms**

y. The maneuvering clearance at the door to Room 191 exceeded a 2% slope, violating 2010 ADAS 404.2.4.1, 1991 ADAS 4.13.6, and 1986 ANSI A117.1 4.13.6. A person using a wheelchair faces the same entry barriers as in Room 197.

z. Upon information and belief, Room 191 has identical and/or similar barriers to Room 197. A person using a wheelchair would have encountered the same accessibility issues in this room.

aa. The maneuvering clearance at the door to Room 193 exceeded a 2% slope, violating 2010 ADAS 404.2.4.1, 1991 ADAS 4.13.6, and 1986 ANSI A117.1 4.13.6. A person using a wheelchair faces the same entry barriers as in Room 197.

bb. Upon information and belief, Room 193 has identical and/or similar barriers to Room 197. A person using a wheelchair would have encountered the same accessibility issues in this room.

cc. The maneuvering clearance at the door to Room 195 exceeded a 2% slope, violating 2010 ADAS 404.2.4.1, 1991 ADAS 4.13.6, and 1986 ANSI A117.1 4.13.6. A person using a wheelchair faces the same entry barriers as in Room 197.

dd. Upon information and belief, Room 195 has identical and/or similar barriers to Room 197. A person using a wheelchair would have encountered the same accessibility issues in this room.

COMPLAINT - 10

ee. Upon information and belief, there were not enough accessible rooms with mobility features, violating 2010 ADAS 224.2. and 1991 ADAS 9.1.2. This limited Mr. Mortland's options for accommodation.

ff. Upon information and belief, accessible guest rooms were not dispersed among various classes of accommodations, violating 2010 ADAS 224.5, 1991 ADAS 9.1.4(1), and 1986 ANSI A117.1 4.20.6. This limited Mr. Mortland's choices regarding room size, cost, and amenities.

**Parking Areas**

gg. The running slope of the accessible parking space at Room 191 exceeded 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. This made it difficult or unsafe for Mr. Mortland to park and exit his vehicle.

hh. The parking sign at Room 191 was mounted lower than 60 inches, violating 2010 ADAS 502.6. This made it harder for Mr. Mortland to identify accessible parking.

ii. The running slope of the accessible parking space at Room 193 exceeded 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. This made it difficult or unsafe for Mr. Mortland to park.

jj. The parking sign at Room 193 was mounted lower than 60 inches, violating 2010 ADAS 502.6. This made it harder for Mr. Mortland to identify accessible parking.

kk. The accessible parking access aisle between Rooms 191 and 193 contained a built-up curb ramp with slopes greater than 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. This created hazardous conditions for Mr. Mortland.

ll. The cross and running slopes of the access aisle between Rooms 191 and 193 exceeded 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.2, and 1986 ANSI A117.1 4.6.2. This

COMPLAINT - 11

impeded safe wheelchair movement for Mr. Mortland.

mm.    The running slope of the left access aisle at the indoor pool entry exceeded 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. This made access to the pool area difficult for Mr. Mortland.

nn. The left access aisle at the indoor pool entry was not located on an accessible route to the building entrance, violating 2010 ADAS 208.3.1 and 502.3, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. Mr. Mortland could not reach the entrance safely.

oo. The running slope of the left accessible parking space at the indoor pool entry exceeded 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. This made it difficult or unsafe for Mr. Mortland to park.

pp. The running slope of the right accessible parking space at the indoor pool entry exceeded 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. This made it difficult or unsafe for Mr. Mortland to park.

qq. The accessible parking access aisle at the indoor pool entry contained a built-up curb ramp with slopes greater than 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. This created hazardous conditions for Mr. Mortland.

rr.  The access aisle at the indoor pool entry was less than 5 feet wide, violating 2010 ADAS 502.3.1, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. This restricted maneuverability for Mr. Mortland.

ss. The accessible route at the built-up curb ramp contained loose gravel or unstable surfaces, violating 2010 ADAS 302.1, 1991 ADAS 4.5.1, and 1986 ANSI A117.1 4.5.1. Mr. Mortland risked getting stuck or tipping.

tt.  The right access aisle at the indoor pool entry was not located on an accessible route to

COMPLAINT - 12

the building entrance because the ramp was too narrow, violating 2010 ADAS 208.3.1 and 502.3, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. Mr. Mortland could not reach the entrance safely.

uu. The access aisle was missing at the accessible parking space by the lobby entry, violating 2010 ADAS 502.2, 1991 ADAS 4.6.2, and 1986 ANSI A117.1 4.6.2. Mr. Mortland could not exit his vehicle safely.

vv. The cross slope of the right parking space by Room 138 exceeded 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. This made it difficult or unsafe for Mr. Mortland to park.

ww. The cross slope of the left parking space by Room 138 exceeded 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. This made it difficult or unsafe for Mr. Mortland to park.

xx. The cross slope of the access aisle by Room 138 exceeded 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. This impeded safe wheelchair movement for Mr. Mortland.

yy. The access aisle by Room 138 was not located on an accessible route to the building entrance, violating 2010 ADAS 208.3.1 and 502.3, 1991 ADAS 4.6.3, and 1986 ANSI A117.1 4.6.3. Mr. Mortland could not reach the entrance safely.

zz. The cross and running slopes of the accessible stall by Room 196 exceeded 2%, violating 2010 ADAS 502.4, 1991 ADAS 4.6.2, and 1986 ANSI A117.1 4.6.2. This made it difficult or unsafe for Mr. Mortland to park.

aaa. The access aisle was missing at the accessible parking space by Room 196, violating 2010 ADAS 502.2, 1991 ADAS 4.6.2, and 1986 ANSI A117.1 4.6.2. Mr.

COMPLAINT - 13

Mortland could not park safely.

bbb.     The required parking signage was missing by Room 196, violating 2010 ADAS 502.6. This made it harder for Mr. Mortland to identify accessible parking.

**Indoor Pool Area**

ccc.     The maneuvering clearance on the pull side of the exterior door to the indoor pool was obstructed, violating 2010 ADAS 404.2.4.1, 1991 ADAS 4.13.6, and 1986 ANSI A117.1 4.13.6. Mr. Mortland had difficulty entering the pool area.

ddd.     The threshold at the pool entry door exceeded 1/2 inch, violating 1991 ADAS 4.13.8 and 1986 ANSI A117.1 4.13.8. This created a barrier for Mr. Mortland at the pool entrance.

eee.     There was no accessible route to the upper pool, violating 2010 ADAS 206.2.4, 1991 ADAS 4.1.3(1), and 1986 ANSI A117.1 4.20.1. Mr. Mortland could not access the upper pool.

fff. The upper swimming pool did not have the required accessible means of entry, violating 2010 ADAS 242.2 Exception 1. Mr. Mortland was excluded from using the pool.

ggg.     The lower swimming pool did not have the required accessible means of entry, violating 2010 ADAS 242.2 Exception 1. Mr. Mortland was excluded from using the pool.

**Men's Lobby Restroom**

hhh.     A compliant room identification sign was missing on the strike side of the men's lobby restroom door, violating 2010 ADAS 216.2 and 1991 ADAS 4.30.6. This made it difficult for Mr. Mortland to locate the accessible restroom, potentially causing confusion and inconvenience.

COMPLAINT - 14

iii. The door opening to the men's lobby restroom did not provide at least 32 inches of clear width, in violation of 2010 ADAS 404.2.3, 1991 ADAS 4.13.5, and 1986 ANSI A117.1 4.13.5. As a result, Mr. Mortland was unable to safely enter the restroom, denying him access to essential facilities.

jjj. The men's lobby restroom was not compliant, lacking the required minimum clear floor space and maneuvering clearances for the toilet and lavatory, with the entry door encroaching into required clear space, excessive door opening pressure, incorrectly installed grab bars, and inaccessible accessories, violating 2010 ADAS 213.2, 1991 ADAS 4.1.2(6), and 1986 ANSI A117.1 4.3.7. These deficiencies made it extremely difficult or impossible for Mr. Mortland to use the restroom independently and safely.

**Women's Lobby Restroom**

kkk. A compliant room identification sign was missing on the strike side of the women's lobby restroom door, violating 2010 ADAS 216.2 and 1991 ADAS 4.30.6. This hinders a person using a wheelchair from identifying and locating the accessible restroom.

lll. The door opening to the women's lobby restroom did not provide at least 32 inches of clear width, violating 2010 ADAS 404.2.3, 1991 ADAS 4.13.5, and 1986 ANSI A117.1 4.13.5. This prevents people using wheelchairs from entering the restroom, denying access to necessary facilities.

mmm. The women's lobby restroom was not compliant, lacking the required minimum clear floor space and maneuvering clearances for the toilet and lavatory, with the entry door encroaching into required clear space, excessive door opening pressure, incorrectly installed grab bars, and inaccessible accessories, violating 2010 ADAS 213.2, 1991

COMPLAINT - 15

ADAS 4.1.2(6), and 1986 ANSI A117.1 4.3.7. These issues make it extremely difficult or impossible for a person using a wheelchair to use the restroom independently and safely.

**Guest Services and Lobby Area**

nnn.	The guest services counter in the lobby was obstructed and not a minimum of 36 inches wide, violating 2010 ADAS 904.4. This prevented Mr. Mortland from accessing services at the counter, limiting his ability to check in, ask questions, or conduct transactions.

ooo.	The clear floor space for the counter was obstructed by boxes and a scooter, violating 2010 ADAS 305.3, 1991 ADAS 4.2.4.1, and 1986 ANSI A117.1 4.2.4.1. This impeded Mr. Mortland's approach to the counter, further restricting his access to services.

ppp.	The clear floor space for the ATM was obstructed by boxes and a scooter, violating 2010 ADAS 305.3, 1991 ADAS 4.2.4.1, and 1986 ANSI A117.1 4.2.4.1. This denied Mr. Mortland independent access to financial services.

**Stairway and Ramp**

qqq.	The stairway projected into the headroom clearance in the circulation path, violating 2010 ADAS 307.2, 1991 ADAS 4.4.1, and 1986 ANSI A117.1 4.4.1. This created a hazard for Mr. Mortland, increasing the risk of collision or injury.

rrr. The ramp on the interior accessible route did not have compliant handrails, violating 2010 ADAS 505.1, 1991 ADAS 4.8.5(1), and 1986 ANSI A117.1 4.22.2. This made it unsafe for Mr. Mortland to use the ramp, increasing the risk of falls.

**Business Center**

sss.	The work surface in the business center was higher than 34 inches, violating 2010 ADAS

COMPLAINT - 16

902.3, 1991 ADAS 4.32.4, and 1986 ANSI A117.1 4.30.4. This made the work surface inaccessible for Mr. Mortland, preventing him from using the business center independently.

**Breakfast Area**

ttt. Compliant knee and/or toe clearance was not provided at the breakfast area tables, violating 2010 ADAS 306.2.1, 1991 ADAS 4.32.3, and 1986 ANSI A117.1 4.30.3. This prevented Mr. Mortland from using the tables for dining.

uuu. There were no accessible dining surfaces in the breakfast area, violating 2010 ADAS 226.1, 1991 ADAS 5.1, and 1986 ANSI A117.1 4.6.3. This excluded Mr. Mortland from dining with other guests.

vvv. Multiple breakfast items and amenities were mounted too high for side approach, violating 2010 ADAS 308.3.2, 1991 ADAS 4.2.6, and 1986 ANSI A117.1 4.2.5 and 4.2.6. This made it impossible for Mr. Mortland to reach and use these items independently.

**Loading Zone**

www. The passenger loading zone was missing the required access aisle, violating 2010 ADAS 503.3. This made the loading zone inaccessible for Mr. Mortland, preventing safe drop-off and pick-up.

**Covered Patio Route**

xxx. The accessible route to the outdoor covered patio had running slopes greater than 5% and was not constructed as a ramp, violating 2010 ADAS 403.3, 1991 ADAS 4.3.7, and 1986 ANSI A117.1 4.3.7. This made the patio inaccessible for Mr. Mortland.

yyy. The walkway to the outdoor covered patio contained abrupt vertical edges and

COMPLAINT - 17

variations over 1/4 inch, violating 2010 ADAS 303.2 and 303.3, 1991 ADAS 4.5.2, and 1986 ANSI A117.1 4.5.2. This created a tripping hazard and a significant barrier for Mr. Mortland, preventing safe access to the patio.

On personal knowledge, information and belief, other public facilities and elements too numerous to list were improperly inaccessible for use by persons with physical disabilities.

16. At all times stated herein, the existence of architectural barriers at Defendant's place of public accommodation evidenced "actual notice" of Defendant's intent not to comply with the Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.*, either then, now or in the future.

17. As a legal result of Defendant's failure to act as a reasonable and prudent public accommodation in identifying, removing or creating architectural barriers, policies, practices and procedures that denied access to plaintiff and other persons with disabilities, plaintiff suffered damages as alleged herein.

18. As a further legal result of the actions and failure to act of Defendant, and as a legal result of the failure to provide proper handicapped-accessible public facilities as set forth herein, Mr. Mortland was denied his civil rights to full and equal access to public facilities. Mr. Mortland suffered a loss of his civil rights and his rights as a person with physical disabilities to full and equal access to public facilities, and further suffered from personal physical injury, shame, humiliation, embarrassment, anger, disappointment and worry, expectedly and naturally associated with a person with physical disabilities being denied access, all to his damages as prayed hereinafter in an amount within the jurisdiction of this court.

19. On information and belief, construction alterations carried out by Defendant has triggered access requirements under Americans with Disability Act of 1990 ("TITLE III" AND

COMPLAINT - 18

"ADA"), 42. U.S.C. §§ 12181 *et seq.*

20. Mr. Mortland, as described herein below, seeks injunctive relief to require the Glenstone Lodge hotel to be made accessible to meet the requirements of both Tennessee law and the Americans with Disabilities Act, whichever is more restrictive, so long as Defendant operates and/or leases the Glenstone Lodge hotel as a public facility. Plaintiff seeks damages for violation of his civil and consumer rights, from the date of his visit until such date as Defendant brings the establishment into full compliance with the requirements of Tennessee and federal law.

21. On information and belief, Defendant has been negligent in its affirmative duty to identify the architectural barriers complained of herein and negligent in the removal of some or all of said barriers.

22. Because of Defendant's violations, Mr. Mortland and other persons with physical disabilities are unable to use public facilities such as those owned and operated by Defendant on a "full and equal" basis unless such facility is in compliance with the provisions of the Americans with Disabilities Act and other accessibility law as plead herein. Plaintiff seeks an order from this court compelling Defendant to make the Glenstone Lodge hotel accessible to persons with disabilities.

23. Plaintiff is informed and believes and therefore alleges that Defendant caused the subject property to be constructed, altered and/or maintained in such a manner that persons with physical disabilities were denied full and equal access to, within and throughout said facility of the Glenstone Lodge hotel and were denied full and equal use of said public facility. Further, on information and belief, Defendant has continued to maintain and operate said facility in such conditions up to the present time, despite actual and constructive notice to such Defendant that

COMPLAINT - 19

the configuration of the establishment and/or its building(s) are in violation of the civil rights of persons with physical disabilities, such as plaintiff and the disability community. Such construction, modification, ownership, operation, maintenance and practices of such public facilities are in violation of law as stated in Americans with Disability Act of 1990 ("TITLE III" AND "ADA"), 42. U.S.C. §§ 12181 *et seq.* and elsewhere in the laws of Tennessee.

24. On information and belief, the subject public facility of the Glenstone Lodge hotel denied full and equal access to plaintiff and other persons with physical disabilities in other respects due to noncompliance with requirements of Tennessee civil rights law.

25. On personal knowledge, information and belief, the basis of Defendant's actual and constructive notice that the physical configuration of the facilities including, but not limited to, architectural barriers constituting the Glenstone Lodge hotel was in violation of the civil rights of persons with physical disabilities, such as plaintiff, includes, but is not limited to, communications with invitees and guests, owners of other establishments and businesses, notices Defendant obtained from governmental agencies upon modification, improvement, or substantial repair of the subject premises and other properties owned by the Defendant, newspaper articles and trade publications regarding the Americans with Disabilities Act and other access laws, public service announcements, and other similar information. Defendant's failure, under state and federal law, to make the establishment accessible is further evidence of Defendant's conscious disregard for the rights of plaintiff and other similarly situated persons with disabilities. The scope and means of the knowledge of Defendant is within Defendant's exclusive control and cannot be ascertained except through discovery.

26. Plaintiff will return to the subject Glenstone Lodge hotel to patronize the facility, if it is made fully accessible to a disabled person in a wheelchair, and to also avail himself of the

COMPLAINT - 20

hotel's services.

29.    Should the Glenstone Lodge hotel become accessible, Mr. Mortland will visit it again because he travels through and/or visits the Sevier County, Tennessee area annually on his way to and from Georgia.

30.    Furthermore, plaintiff intends to return to the Glenstone Lodge hotel on an annual basis beginning in 2027, to ascertain whether Defendant removed the barriers to access which are the subject of this litigation.

**I.     FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §12101, *et seq*.)**

31.    Plaintiff pleads and incorporates by reference, as if fully set forth again herein, the allegations contained in paragraphs 1 through 30 of this complaint.

32.    Pursuant to law, in 1990, the United States Congress made findings per 42 U.S.C. §12101 regarding persons with physical disabilities, finding that laws were needed to more fully protect:

> some 43 million Americans with one or more physical or mental disabilities; [that] historically society has tended to isolate and segregate individuals with disabilities; [that] such forms of discrimination against individuals with disabilities continue to be a serious and pervasive social problem; [that] the nation's proper goals regarding individuals with disabilities are to assure equality of opportunity, full participation, independent living and economic self-sufficiency for such individuals; [and that] the continuing existence of unfair and unnecessary discrimination and prejudice denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous.

33. Congress stated as its purpose in passing the Americans with Disabilities Act of 1990 (42 U.S.C. §12102):

> It is the purpose of this act (1) to provide a clear and

COMPLAINT - 21

comprehensive national mandate for the elimination of discrimination against individuals with disabilities; (2) to provide clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities; (3) to ensure that the Federal government plays a central role in enforcing the standards established in this act on behalf of individuals with disabilities; and (4) to invoke the sweep of Congressional authority, including the power to enforce the 14th Amendment and to regulate commerce, in order to address the major areas of discrimination faced day to day by people with disabilities.

34.     As part of the Americans with Disabilities Act of 1990, (hereinafter the "ADA"), Congress passed "Title III - Public Accommodations and Services Operated by Private Entities" (Section 301 42 U.S.C. §12181, *et seq*.). Among the public accommodations identified for purposes of this title was:

(7) PUBLIC ACCOMMODATION - The following private entities are considered public accommodations for purposes of this title, if the operations of such entities affect commerce -
. . .
(A) an inn, hotel, motel, or other place of lodging ***;

42  U.S.C. §12181(7)(A).

35. Pursuant to §302, 42 U.S.C. §12182, "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases, or leases to, or operates a place of public accommodation."

36. The specific prohibitions against discrimination set forth in §302(b)(2)(a), 42 U.S.C. §12182(b)(2)(a) are:

(i) the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;

COMPLAINT - 22

(ii) a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;

(iii) a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

(iv) a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities . . . where such removal is readily achievable; and

(v) where an entity can demonstrate that the removal of a barrier under clause (iv) is not readily achievable, a failure to make such goods, services, facilities, privileges, advantages or accommodations available through alternative methods if such methods are readily achievable.

37. The acts of Defendant set forth herein were a violation of plaintiff's rights under the ADA, 42. U.S.C. §§ 12181 *et seq.*, and Tennessee civil rights law, In. Code § 22-9-1, *et seq.*, making available damage remedies.

38. The removal of the barriers complained of by plaintiff as hereinabove alleged was at all times after January 26, 1992 "readily achievable" as to the subject Glenstone Lodge hotel pursuant to 42 U.S.C. §12182 (b)(2)(A)(i)-(iv). On information and belief, if the removal of all the barriers complained of herein together was not "readily achievable," the removal of each individual barrier complained of herein was "readily achievable." On information and belief, Defendant's failure to remove said barriers was likewise due to discriminatory practices,

COMPLAINT - 23

procedures and eligibility criteria, as defined by §302(b)(2)(a)(i)-(iii); 42 U.S.C. §12182 (b)(2)(A)(i).

39. Per §301(9), 42 U.S.C. §12181 (9), the term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." The statute defines relative "expense" in part in relation to the total financial resources of the entities involved. Plaintiff alleges that properly repairing, modifying, or altering each of the items that plaintiff complains of herein were and are "readily achievable" by the Defendant under the standards set forth under §301(9) of the Americans with Disabilities Act. Further, if it was not "readily achievable" for Defendant to remove each of such barriers, Defendant has failed to make the required services available through alternative methods which were readily achievable.

40. On information and belief, construction work on, and modifications of, the subject Glenstone Lodge hotel occurred in or around the year 1975, with renovations completed thereafter.

41. Pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §12188, *et seq.*, §308, plaintiff is entitled to the remedies and procedures set forth in §204(a) of the Civil Rights Act of 1964, 42 U.S.C. 2000(a)-3(a), as plaintiff is being subjected to discrimination on the basis of disability in violation of this title or has reasonable grounds for believing that he is about to be subjected to discrimination in violation of §302. Plaintiff cannot return to or make use of the public facilities complained of herein so long as the premises and Defendant's policies bar full and equal use by persons with physical disabilities.

42. Per §308(a)(1) (42 U.S.C. 12188), "Nothing in this section shall require a person with a disability to engage in a futile gesture if such person has actual notice that a person or organization covered by this title does not intend to comply with its provisions." Pursuant to this

COMPLAINT - 24

last section, plaintiff has not returned to Defendant's premises since on or about November 8, 2025, through November 9, 2025, but alleges that Defendant has continued to violate the law and deny the rights of plaintiff and of other persons with physical disabilities to access this public accommodation. Pursuant to §308(a)(2), "In cases of violations of §302(b)(2)(A)(iv) . . . injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities to the extent required by this title."

43. Plaintiff seeks relief pursuant to remedies set forth in §204(a) of the Civil Rights Act of 1964 (42 U.S.C. 2000(a)-3(a)), and pursuant to federal regulations adopted to implement the Americans with Disabilities Act of 1990, including but not limited to an order granting injunctive relief and attorneys' fees. Plaintiff will seek attorneys' fees conditioned upon being deemed to be the prevailing party.

Wherefore, plaintiff prays for relief and damages as hereinafter stated.

II. **SECOND CAUSE OF ACTION FOR VIOLATION OF TENNESSEE CONSUMER PROTECTION ACT, TENN. CODE ANN. 47-18-101, ET SEQ.**

44. Plaintiff repleads and incorporates by reference as if fully set forth again herein, the allegations contained in paragraphs 1 through 43 of this complaint.

45. The Tennessee Consumer Protection Act is codified at Tenn. Code Ann. § 4718-101, *et seq.*

46. Mr. Mortland is a "consumer" within the meaning of the Tennessee Consumer Protection Act at Tenn. Code Ann § 47-18-103.

47. Defendant is a "person" within the meaning of the Tennessee Consumer Protection Act at Tenn. Code Ann. § 47-18-103.

48. The Tennessee Consumer Protection Act is to "be liberally construed to *** protect

COMPLAINT - 25

consumers *** from those who engage in unfair *** acts or practices in the conduct of any trade or commerce *** within this state ***" Tennessee Code Ann. 47-18-102.

49. The Tennessee Consumer Protection Act at Tennessee Code Annotated 47-18104(a) provides, "Unfair or deceptive acts or practices affecting the conduct of any trade or commerce constitutes unlawful acts or practices ***."

50. Defendant's failure to make the facilities, programs and services of the public accommodation accessible to Mr. Mortland and resulting prevention by Defendant  or Mr. Mortland from fully and safely enjoying those facilities, programs and services is an "unfair *** act or practice" within the meaning of Tennessee Code Annotated 47-18-104(a) and (b).

51. Mr. Mortland has retained the undersigned counsel for the filing and the prosecution of this complaint. Mr. Mortland is entitled to receive injunctive relief, a reasonable award of damages, expert witness fees, attorney fees, pre-judgment and post-judgment interest on such fees and damages, and litigation costs and expenses paid by Defendant under the Tennessee Consumer Protection Act at Tennessee Code Annotated 47-18-109.

Wherefore, plaintiff prays for relief and damages as hereinafter stated.

**PRAYER:**

Wherefore, Plaintiff Derek Mortland prays that this court grant relief and damages as follows:

**I.** **PRAYER FOR FIRST CAUSE OF ACTION FOR DENIAL OF ACCESS BY A PUBLIC ACCOMMODATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990 (42 U.S.C. §1 2101, et seq.)**

1. For injunctive relief, compelling Defendant to make the Glenstone Lodge hotel, readily accessible to and usable by individuals with disabilities; and to make reasonable modifications in policies, practice, eligibility criteria and procedures so as to afford full access to

COMPLAINT - 26

the goods, services, facilities, privileges, advantages and accommodations being offered.

2. For attorneys' fees, litigation expenses and costs of suit, if plaintiff is deemed the prevailing party; and

3. For such other and further relief as the court may deem proper.

**II.    PRAYER FOR SECOND CAUSE OF ACTION FOR VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT, TENN CODE ANN. 47-18-101, *ET SEQ.***

1. For declaratory judgment finding Defendant in violation of the Tennessee Consumer Protection Act;

2. For injunctive relief, compelling Defendant to make the Glenstone Lodge hotel, readily accessible to and usable by individuals with disabilities and allow them the full and equal enjoyment of the goods, services, privileges, and advantages of public accommodations to the fullest extent required by Title III of the ADA and the Tennessee Consumer Protection Act;

3. General, compensatory and punitive damages according to proof;

4. All damages for each day, from the inception of the filing of this complaint, on which Defendant has failed to remove barriers which denied plaintiff and other persons with disabilities full and equal access.

5. Attorneys' fees pursuant to Tennessee law, if plaintiff is deemed the prevailing party;

6. For all costs of suit;

7. Prejudgment and post judgment interest pursuant to Tennessee law; and

8. Such other and further relief as the court may deem just and proper.

COMPLAINT - 27

Respectfully submitted,

BLAKEMORE, MEEKER & BOWLER CO., L.P.A.

/s/ *COLIN G. MEEKER*
COLIN G. MEEKER (Ohio Bar No. 0092980)
495 Portage Lakes Drive
Akron, OH 44319
Telephone: (330) 253-3337
cgm@bmblaw.com

Attorney for Plaintiff DEREK MORTLAND

COMPLAINT - 28